## READ et al. *v.* WARE.

Where a defendant seeks to dissolve an attachment on the ground of the falsehood of the affidavit made to obtain it, he may proceed summarily, by a rule to show cause. C. P. 258. It is not necessary that such a defence should be set up by plea or exception.

If there be an existing debt, the mere fact that the debt is not due, will not authorise the discharge of an attachment.

A creditor who has accepted, for the accommodation of his debtor, a bill payable a certain number of days after date, drawn by the latter for the amount of the debt, with interest to its maturity, where the bill has been discounted by a bank and the proceeds applied to the extinguishment of the original debt, cannot, before maturity of the bill and its payment by him, be considered as a creditor of the defendant, and as such entitled to an attachment against him. The holder was the creditor; and where, in such a case, an attachment was sued out before the maturity of the bill or its payment by the acceptor, a subsequent payment at maturity, cannot give validity to the attachment previously taken out.

APPEAL from the Commercial Court of New Orleans, *Watts, J. Mott,* for the plaintiffs, cited stat. 7 April, 1826, s. 7. *Tyson* v. *Lansing,* 10 La. 444. *Russell* v. *Wilson,* 18 La. 369. *L. Peirce,* for the appellant. The judgment of the court was pronounced by

SLIDELL, J. This suit was commenced on the 27th March, 1845, by an attachment, upon an alleged indebtedness, which, with the exception of a small item, consisted upon the face of the petition of a claim not yet due. The defendant in attachment made appearance by counsel, and moved to dissolve the attachment on various grounds, among others, that the affidavit was untrue and the suit premature. Upon this rule the plaintiffs appeared and filed an exception praying the dismissal of the rule, because the grounds of the rule could only be made available as exceptions to the suit; and of this opinion was the court below, and the rule was discharged. There was judgment for the plaintiffs, with privilege on the property attached, and the defendant has appealed.

We think the court erred in sustaining the exception to the rule, and in giving judgment, with privilege, on the property attached. The court states as a reason for its opinion, that the grounds of the rule were exceptions to the action, and were available only by exception or plea. The practice of moving to dissolve attachments has been a very common one. The reasons for the application may be as distinctly stated in the grounds for this motion as in an exception or plea, and the difference in substance between the two modes of proceeding is not obvious. It is true, also, that such motions involve, to a partial extent, the consideration of the merits of the cause; but the practice has arisen from a consideration of the stringent nature of the remedy. It is very clearly sanctioned by the 258th article of the Code of Practice, by which the defendant is permitted to prove, in a summary manner, after having given due notice in writing to the adverse party, that the allegations on which the order for attachment had been obtained were false; and where this is done, the Code directs

that the attachment shall be dissolved, and the party will be allowed to proceed in his defence as in ordinary suits. The expression "*garnishee*" is used in the english text: but this is a mere mistake of translation, as is evident from the french text and from the context. Similar motions are permitted in the case of arrest. C. P. art. 218. The rule in both cases is founded on the same motive—the propriety of giving summary relief in view of the severe character of the remedy, the operation of which might be ruinous to the defendant if he were compelled to wait the ordinary action of justice. The line which separates a trial upon the merits from a motion to dissolve, may be difficult to define, and we do not desire to lay down any general rule; but we think it a fair subject of enquiry upon motion, whether there was, at the date of the attachment, such an existing debt as authorised the remedy. The plaintiffs had sworn, on the 27th March, 1845, that the defendant was justly and truly indebted to them in the sum of $3,404 27, and that he was about to remove his property out of the State before the said debt would fall due. Whatever may have been the moral sincerity of the plaintiffs in making this affidavit, if in legal contemplation the defendant was not then indebted to the plaintiffs, the affidavit was untrue, and they had no right to pursue that remedy. To this point we now address an enquiry, premising that under the statute, if there be *an existing indebtedness*, the mere fact that it is not due does not authorise the dissolution of the attachment.

The state of the case is clearly shown by the plaintiffs' supplemental petition, and by the plaintiffs' own witness, examined at the time on the merits. The plaintiffs had, in the year 1844, accepted for the accommodation of the defendant, three certain bills of exchange, amounting to $3,311 14, to enable him to purchase goods. The defendant was a resident of Jackson, Mississippi; and by means of these goods it was expected that he would be enabled to control and purchase cotton to be shipped to the plaintiffs, who, out of the proceeds, were to pay the acceptances. At the approach of the maturity of the drafts the defendant was unable to ship cotton to plaintiffs, or place them in funds to meet the acceptances; and the defendant promised, that if they would give him an extension of sixty days, he would either ship them a large amount of cotton, or place them in funds to meet the renewed acceptance. The plaintiffs accordingly did accept the defendant's draft for $3,413 45, which draft was dated in January, 1845, and made payable the 1st March ensuing. This draft was for the amount of the three acceptances, which fell due early in February, with interest and commissions added; the proceeds of which were applied to the payment of the three previous acceptances. The attachment issued before the maturity of the draft thus drawn in settlement, and employed in the payment, of the three previous acceptances; it was held by the City Bank, and was not paid by the plaintiffs till the 1st April, five days afterwards.

It cannot be said that, at the date of the attachment, the plaintiffs were creditors of the defendant for the amount of this accommodation acceptance. The holder was the creditor; as between the plaintiffs and the defendants, there was not an existing indebtedness payable at a future day. The subsequent payment of the bill by the plaintiffs, which made them the defendant's creditor, could not retroact, so as to give validity to the attachment. An attachment must stand or fall according to the state of facts existing at the date of its issuing, and cannot be cured by a subsequent event. To say otherwise would be to say that the defendant was liable to a double attachment at the same time, one by the

bill holder and one by the accommodation acceptor. See *Blanchard* v. *Grousset*, 1 Annual Rep. 98. *Black* v. *Zacharie*, 2 Howard, 510.

We are of opinion that the attachment was improperly issued, and should have been dissolved.

The judgment, so far as it grants a privilege on the property attached, is erroneous; but the plaintiffs had a right to prosecute their suit, independently of the attachment, as the defendant made appearance, and a supplemental petition was filed by the plaintiffs after the draft became due and was paid by them.

It is therefore decreed that the judgment of the court below be so amended as to be a judgment against the defendant personally, but without privilege upon the property attached; that the said attachment be dissolved; and that the plaintiff pay the costs of this appeal, and those of the court below incurred by the attachment.