No. 9625.

EDGAR HINCKS ET AL., COMMISSIONERS, VS. GEORGE T. CONVERSE ET ALS.

1. It is unnecessary that all joint obligees interested in the enforcement of a joint obligation, should be joined as plaintiffs in a suit to enforce it. Anyone may sue and recover thereon to the extent of his interest in it.

2. The rule with regard to the books of a merchant being inadmissible in his favor, does not apply to those of corporations.

3. The testimony of witnesses on a former trial of same suit, may be used by either party on a second or subsequent trial thereof, if the witnesses are dead or, for other cause, cannot be then produced.

This rule is applicable to evidence offered on such former trial and admitted without objection, in pursuance of a previous agreement of parties, when that rejection of same would occasion the party offering it either injury or surprise.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*W. S. Benedict* for Plaintiffs and Appellees.

*Percy Roberts* and *E. E. Moïse* for Defendants and Appellants.

The opinion of the Court was delivered by

WATKINS, J The plaintiffs, as commissioners of the Workingmen's Bank, claim to represent the successors and assigns of the Workingmen's Accommodation Bank and the individual members thereof, and to be entitled to recover of defendants $11,373.78, on the bond of Converse.

They aver that there were certain informalities in the act of incorporation of the Workingmen's Accommodation Bank, and that the individual members thereof and their assigns, incorporated said banking association under the name and style of the Workingmen's Bank, and that said act of incorporation was thereafter recognized and approved by the legislature.

They claim to be the legal successors, assigns and transferees of *all* the assets, rights and credits of said Accommodation Bank and of the individual members thereof; and particularly of all the rights, titles, claims and demands of same, against defendants, on the bond.

They further claim that, in confirmation of their said rights, the in-

dividual members and former stockholders of said bank, and the owners of its property, rights and actions held in its name, did expressly recognize them, and waive and remit any formal transfer thereof to the Workingmen's Bank.

When this case was last here, this Court decided that neither the act of incorporation nor the legislative enactment conferred any of the rights of the former association upon the Workingmen's Bank "except of those who assented to the proceedings."

It said that, "under the pleadings, the plaintiffs claim that the bank was the assignee of the rights in the bond of the original owners.

" It had the right to prove such an assignment, and to the extent of such proof is entitled to recover.

"The membership in the Accommodation Bank was represented by 3,434 shares of stock belonging to various persons. It is claimed that the Workingmen's Bank has acquired the ownership and direct representation of these, and evidence is found in the record tending to establish the claim.

"This evidence has not been passed upon by the judge *a quo*.

"It consists, in large measure, of the books of the Workingmen's Bank itself, which the judge admitted over the objection and exception of the defendants. This was error.

"The books of that corporation may be very good evidence of the ownership of its own stock; but we cannot see how they can be received to establish the acquisition of the interests of the members of the former concern.

"It is useless to decide this case by piece-meal, or to comment upon other evidence.

"The task devolving upon the plaintiffs is to establish, by competent evidence, the extent to which they own or represent the owners of the stock of the Workingmen's Accommodation Bank. To the extent of the interest so established they may maintain an action on the bond, and recover their proportion of defendants thereon." 37 Ann. 489.

This full quotation is made from the former opinion for the purpose of bringing discussion of the issues involved within proper limits.

## I.

The first question propounded by the defendants' counsel is: "Can any one stand in judgment for the debt, except *all* of its original owners appear together, or some one showing himself to be assignee of all of them ?"

They have cited no decisions of this Court supporting that theory, but place reliance solely upon the French jurisprudence.

We find various decisions of this Court bearing on the question, and we quote a few of them.

In *Duchamp vs. Nicholson*, 2 N. S. 672, the right of single individual to sue upon an auctioneer's bond for an injury suffered was recognized.

In *Henderson vs. Montgomery*, 2 N. S. 422, it was held that an "injured person may bring suit in his own name upon an U. S. Marshal's bond." 4 N. S. 523, Dick vs. Reynolds; 5 O. S. 321, Mayor vs. Baily.

In *Musson vs. Richardson*, 11 R. 37, it was held that an individual stockholder in a liquidated corporation, had a legal right to sue to annul a judgment against it. 2 R. 570, Quinn vs. Moyes.

It is a settled principle that the pledgee of a negotiable promissory note, may sue upon it and recover " to the extent of his debt." 29 Ann. 549 ; 21 Ann. 3 ; 28 Ann. 419 ; 7 Ann. 225.

In 32 Ann. 303, *Martinez vs. Succession of Vives*, our immediate predecessors held that an attorney-at-law, having an interest in a judgment for his fee, might sue to have it revived.

In 32 Ann. 431, *Robins vs. Brown*, it was held that a "sheriff has a cause of action in damages, or otherwise, to protect himself from liability ; but, his right of action is limited to the *degree* of responsibility which may result, should the property seized be withdrawn." 33 Ann. 146 ; 12 R. 563 ; R. C. C. 2081.

The only case directly opposite is *Alling vs. Woodruff*, 16 Ann. 6, which decides that " in case of a joint obligation as to the obligees, there arises in their favor only a joint right of action, which can only be exercised by a suit jointly instituted by them.

" The law does not permit a multiplicity of suits on an obligation joint as to the obligors ; nor does the law allow a multiplicity of actions for the enforcement of a contract joint as to the obligees."

That decision is unsupported by the citation of authority, and it rests, presumably, upon the provisions of R. C. C. 2085, which are to the effect that "in every suit on a joint contract, all of the obligors must be made parties, etc."

But this article is strictly confined to suits against *obligors*.

There is no similar requirement contained in R. C. C. 2081, which relates to contracts in favor of joint *obligees* ; or those which " create obligations joint in favor of obligees."

But Act 103 of 1870, Acts of 1871, p. 19, so alters the law as to no longer require all joint obligors to be cited, in order to maintain an action on a joint obligation.

This statute fully answers the argument employed in Alling vs. Woodruff, or rather pursuing that course of reasoning, a ready answer is given defendants here.

Their exception cannot be maintained.

## II.

Plaintiffs offered in evidence all the books of the Workingmen's Bank that were offered on last trial; and also the books of the Workingmen's Accommodation Bank, which were not offered on previous trial. All of them were admitted over defendants' objections and exceptions.

They argue the same objection then proferred is good now.

They admit, as a general rule, that the declarations contained in the books of a corporation are good against it; but they claim that they are, as to third persons, *res inter alios acta.*

Defendants' counsel cite 34 Ann. 605, Gordon & Gomilla vs. Mechler, as authority on this question.

It is to the effect that a bank cannot extinguish a credit of one of its depositors by compensation, and that it is essential to the validity of its by-laws that they be consonant with the general law; and they cannot interfere with the rights and privileges of third persons.

In this case the execution of the bond sued on is not denied.

The only question of fact left in contention is—quoting from defendants' counsel's brief—"Has any one or more of the original owners of the debt assigned his interests in it to the Workingmen's Bank? If so, how many ?"

The books were not offered or received for the purpose of establishing or increasing the liability of defendants on the bond, but as proof, or the commencement of proof, of the transfer or assignment to the Workingmen's Bank of the stock in the former association.

The authorities quoted apply to the rule laid down in R. C. C. 2248, to the effect that " the books of a merchant cannot be given in his favor," and are not applicable to the question at bar.

Plaintiffs claim to be the owners and representatives of the owners of *all* the shares of stock in the Workingmen's Accommodation Bank. They aver that the stock certificate book of that bank, and the certificates of stock themselves, show that the holders of 510 shares of its stock are surrendered by them to the Workingmen's Bank, and they accepted in lieu thereof the stock of that bank; and the subscription ledger of the Accommodation Bank shows that 134 shares had been subscribed, but for which certificates had not been issued at the time of the liquidation; but the owners of said shares took certificates of the Workingmen's Bank, and received its stock in equal amount in lieu of their stock subscription in the old association.

They also claim that of the stock remaining 170 shares were held by other persons who took part in the organization of the bank, as the

Workingmen's Bank, their stock in the old association having been exchanged therefor.

They further claim that the books of the Workingmen's Accommodation Bank are the identical ones used by the Workingmen's Bank, or, in other words, the latter continued to use the books of the former.

These announced purposes are in strict keeping with the plaintiffs' cause of action set out in this opinion.

Of many of those facts these books would, in the nature of things, furnish the best evidence, and leave nothing behind in the possession or under the control of plaintiffs, other than secondary evidence.

Those books should furnish a full and complete record of all the transactions of the association, and particularly of its issuance of stock certificates; the pledge, assignment or transfer thereof; the subscription of stock, and generally all the proceedings of the concern.

If any part or all of the stock of this association has been absorbed by the Workingmen's Bank, the latter issuing to the holders thereof new certificates, the books of the Accommodation Bank would necessarily form a connecting link in the chain of evidence thereof.

It is of first importance to know the amount of stock in the Workingmen's Accommodation Bank, either subscribed for or issued; into how many shares same was divided; the amount of each share; to whom they were issued; and by whom same are held and owned.

Proof "tending to establish this claim" was administered upon the former trial, but was not evidenced by the books of the Workingmen's Accommodation Bank.

It did consist, "in large measure of the books of the Workingmen's Bank."

They were held to be competent evidence of the ownership of its own stock. For the same reason, the books of the Workingmen's Accommodation Bank are competent evidence of the ownership of its stock.

The Workingmen's Bank had the right to issue certificates of stock to its subscribers in such manner and style as the by-laws thereof provided. It had the right to issue them to members of the old association, and accept in lieu thereof or in payment therefor the certificates of stock held by them in the Workingmen's Accommodation Bank. Those certificates of stock had a value to the extent of the respective interests of the holders thereof in the bond sued on; and, in order to realize this value, and to reimburse itself for certificates of new stock issued, the Workingmen's Bank have a cause of action upon the bond

of defendants, as well as for the value of other stock differently acquired.  We think defendants' exception was properly overruled.

### III.

On the last trial of this cause the defendants objected to the introduction by the plaintiffs of certain depositions that were introduced on the former trial, under a written agreement of previous date, without objection.

The testimony of witnesses in a previous suit between same parties for the same cause of action, when there has been an opportunity for cross-examination, may be used by either party, if the witness be dead, or for other cause cannot be produced.  Hen. Dig., p. 506, No. 2.

It was stated in argument, and not denied, that some of those witnesses are dead ; and it nowhere appears in the record that any one of them could have been produced by the plaintiffs, for cross-examination by defendant's counsel.

If they did not have that opportunity, on the former trial, it was due to their tacit acquiescence in its introduction without it.

Relying, doubtless, upon the agreement, coupled with the fact that, upon the former trial, no objection to its introduction was urged, the plaintiffs had no expectation of same being met with objection upon the latter one; and to maintain it now would prejudice plaintiff's case when he is not at fault.

We think it is in keeping with the spirit of the agreement that the evidence should be received, and therefore approve the ruling of the judge *a quo*.

### IV.

On the merits the evidence has fully satisfied us, among others, of the following facts, viz:

1st.  That there were subscribed for, and issued, by the Workingmen's Accommodation Bank, 3434 shares of stock.

2d.  That of these the Workingmen's Bank acquired by transfer, and was the owner, at the date of its liquidation, of 972 shares.

3d.  That of those subscribed and partly paid for before, and actually issued subsequent to the 27th of September, 1873, the Workingmen's Bank, by transfer, had become the owners of 440 shares.

4th.  That of the shares represented by the owners, who signed the agreement authorizing institution of suit on the bond, there are 899 shares.

5th.  That there are owned and held by parties who signed the act of organization of the Workingmen's Bank, and who became stock-

holders therein, and are directly represented by the plaintiffs, to the extent of 859 shares.

6th. That of the said shares there had been surrendered and re-issued as stock in the Workingmen's Bank, 124 shares.

Hence the plaintiffs own and represent 3294 shares of the stock in the Workingmen's Accommodation Bank, and there are remaining 140 shares, of which they have no control.

The evidence further satisfies us of the defalcation of George ·T. Converse, as alleged, and of the defendants liability, according to the terms and tenor of the bond ; but the judgment rendered against E. K. Bryant must be reduced so as to allow plaintiff the sum of $\frac{3294}{3434}$ths of $5000, with interest; and that against the heirs of William P. Converse, Jr., must be reduced so as to allow plaintiff the sum of $\frac{3294}{3434}$ths of $2500, with interest.

And it is therefore ordered, adjudged and decreed that, as thus amended and reduced, the judgment appealed from be affirmed, the plaintiffs and appellees paying cost of appeal.

Judgment amended and affirmed.