(114 So. 595)

No. 28517.

## STUBBS et al. v. IMPERIAL OIL & GAS PRODUCTS CO.

Oct. 31, 1927.

*(Syllabus by Editorial Staff.)*

1. Mines and minerals ⬿78(1)—Main consideration of mineral lease being development of minerals, lessee must develop with reasonable diligence or give up contract.

Since main consideration of a mineral lease is development of leased premises for minerals, lessee must develop with reasonable diligence or give up contract.

2. Mines and minerals ⬿78(1)—Drilling of only one well on tract of nearly 1,200 acres held not reasonable development of oil and gas property.

Where, under terms of lease dated March 16, 1918, of contiguous tracts of land containing nearly 1,200 acres, after discovery of gas in paying quantities, lessee became exempt from loss or forfeiture of contract unless it failed to reasonably and timely develop the leased premises, and where part of leased premises was in proven territory and part, if not, was contiguous to it, drilling of only one well since execution of lease *held* not reasonable development of the property.

3. Mines and minerals ⬿78(7)—Failure of petition to show lessee was in default was immaterial where putting it in default would have been idle ceremony.

In suit to enforce specific performance of an oil and gas lease or, in alternative, for its rescission because of breach of its obligations, failure of petition to show that lessee had been placed in default was immaterial, since putting in default would have been an idle ceremony where lessee refused further to develop leased premises.

4. Appeal and error ⬿172(3)—Demand for damages for lessee's failure to drill more than one well, not being set up in pleadings, cannot be considered on appeal.

In lessors' suit to enforce specific performance of oil and gas lease or, in alternative, for its rescission, demand for damages, alleged to have been suffered because of lessee's refusal to drill more than one well, not having been set up in pleadings, cannot be considered on appeal.

5. Judgment ⬿252(5)—Prayer for general relief held not to warrant judgment for damages when no damages were alleged or asked for.

In suit by lessors to enforce specific performance of lease of lands for oil and gas or, in alternative, for rescission because of breach, prayer of petition for general relief did not warrant affirmative relief by judgment for damages against lessee when no damages were alleged or asked for.

6. Specific performance ⬿131—Decree affirming judgment required lessee to drill at least one well within reasonable time after decree.

In suit to enforce specific performance of oil and gas lease, or, in alternative, for its rescission, affirmance on appeal of judgment that, unless further development was begun within reasonable time and prosecuted until land was reasonably developed, then lease is to be declared forfeited *held* to require lessee to drill

at least one more well within reasonable time after decree became final.

**7. Mines and minerals ⬉⬎78(7)—"Reasonable time" within which lessee must drill well, as required by decree is determinable by conduct of persons of ordinary prudence under similar conditions.**

Where decree in lessors' suit to enforce specific performance of oil and gas lease or, in alternative, for a rescission, required lessee to further develop lands within "reasonable time," on question of what constituted reasonable time, parties must be governed by what would be expected of persons of ordinary prudence under similar circumstances and conditions, having regard to interests of both parties.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable Time.]

Appeal from Fourth Judicial District Court, Parish of Ouachita; George Gunby, Judge ad hoc.

Suit by Linton W. Stubbs and others against the Imperial Oil & Gas Products Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Hudson, Potts, Bernstein & Sholars, of Monroe, for appellant.

Murff & Perkins, of Shreveport, and Frank P. Stubbs, of Monroe, for appellees.

ROGERS, J. On March 16, 1918, plaintiffs, as lessors, entered into an oil and gas lease with one Joseph B. Cheuvront, as lessee, the contract embracing several contiguous tracts of land containing nearly 1,200 acres in the parish of Ouachita. Subsequently the lessee assigned his rights in the lease to the present defendant.

One of the provisions of the contract reads as follows, viz.:

"If the lessee shall sink a well or shaft and discover oil or gas in paying quantities in or under the above-described land, then this lease shall remain in full force and effect for ten years from such discovery, and as much longer as oil or gas shall be produced therefrom in paying quantities; and, having so discovered oil or gas in paying quantities, the lessee shall be exempt from loss or forfeiture of this lease, in whole or in part, except after judicial ascertainment that the lessee has failed to perform its duty and discharge its obligations hereunder and a reasonable opportunity thereafter to prevent such loss or forfeiture and in event of final loss or forfeiture there shall be reserved to the lessee each producing well with 10 acres surrounding the same to be designated by the lessee."

Within the time prescribed, the lessee drilled a well which produced and has been constantly producing gas in paying quantities. Since then, however, it has neglected and refused to drill any other well on the leased premises, taking the position, in response to plaintiffs' demand that it do so, it had performed and was performing all of its obligations under the terms of the agreement.

The present suit was instituted to enforce the specific performance of the lease; or, in the alternative, for its rescission because of a breach of its obligations.

The prayer of the petition is for judgment against the defendant company—

"declaring that it, or its assigns, have not fulfilled all its obligations under the lease, nor done its full duty in the premises, and ordering it to make further and reasonable developments of said land for oil and gas, within 30 days from date of judgment hereon, or, in default thereof, that said lease be canceled, except as to the 10 acres around the producing well already drilled."

The answer of the defendant, after its exception of no cause of action was overruled, averred, in effect, that the drilling of the original well was a reasonable compliance with the terms of the lease.

The court below rendered judgment in favor of plaintiffs—

"decreeing that defendant had failed to comply with its obligations under the contract of lease sued upon in this cause."

And it further ordered and adjudged:

"That, unless operations for further development are begun on said land within a reasonable time, and diligently prosecuted until said land is reasonably developed, then this lease shall be declared forfeited, canceled, and set aside, except as to the 10 acres immediately around the producing well on said land."

The defendant appealed from the judgment, and plaintiffs have answered the appeal.

[1] The main consideration of a mineral lease is the development of the leased premises for the minerals; and the lessee must develop with reasonable diligence or give up the contract. Green v. Standard Oil Co., 146 La. 937, 84 So. 211; Prince v. Standard Oil Co., 147 La. 283, 84 So. 657; Caldwell v. Alton Oil Co., 161 La. 139, 108 So. 314.

[2] Under the terms of the lease, as hereinabove quoted, after the discovery of gas in paying quantities, lessee became exempt from the loss or forfeiture of his contract, unless he failed to reasonably and timely develop the leased premises.

It is undisputed that the portion of the leased premises lying east of the Ouachita river, and on which the well was drilled, is in what is known as proven territory. The portion of plaintiffs' lands lying on the west side of the river, if not to be considered in proven territory, is at least on the edge of it. And only recently a producing well, known as the "Hunter well," was brought in on the west side of the river at a point about 7 miles southwest of the well on the plaintiffs' property. Be that as it may, it is certain that the defendant considers the west side lands valuable for its purposes, since it is unwilling to relinquish the lease thereof.

Our conclusion is that the drilling of only one well since the execution of the lease on a body of land as extensive and of the character as that embraced within the lease is not a reasonable development of the property. As stated by the trial judge:

"The inferential showing made by defendant as to the completeness of the development of the leased tract established only that there is a lack of uniformity in the practice of different operators as to the spacing of wells in the gas area. And it was shown that defendant purchases from another source for its own use 10,000,000 cubic feet of gas per day, many times the amount produced from the well of lessor's land."

[3] Under its exception, the defendant company contended in the court below that the petition failed to show it had been placed in default in the manner required by law. In this court its counsel is not, apparently, insisting upon the exception, since it is not argued in their brief. We will say, however, that we do not think there is any merit in the contention. The petition does allege the failure and refusal of the defendant company, although repeatedly requested to do so, to comply with its obligations to further develop the land. A putting in default, if any was necessary, would have been an idle ceremony, in view of the refusal of the defendant to further develop the leased premises.

In their answer to the appeal, plaintiffs have asked that the judgment of the court below be amended—

"by decreeing said lease to be forfeited, except as to 10 acres around the producing well, unless defendant, lessee, shall pay such sum in cash as the court may fix within 10 days after finality of judgment, and begin further development on said land within 30 days, and diligently prosecute the same until said land is reasonably developed, and, in default thereof, or any part thereof, that said forfeiture become ipso facto complete and said lease fully canceled, except as to the 10 acres immediately around producing well."

[4, 5] In accordance with the demand for amendment as contained in their prayer, plaintiffs have set forth, in their original brief, certain alleged items of loss and damage, aggregating $45,000, which they contend they have suffered and for which they should

have judgment, by reason of the failure and refusal of the defendant company to drill more than one well on their lands during the period elapsing between the date of the lease and the institution of the present suit. Their demand for these damages was not set up in their pleadings and therefore cannot be considered on appeal. Nor does the prayer of the petition for general relief warrant any such affirmative relief as a judgment for damages against the defendant company, when no such damages are alleged or asked for.

[6, 7] Plaintiffs, in their oral argument and printed briefs, ask us to fix the number of wells and the time of their beginning and completion which should or could be drilled on the leased lands. A similar request was made of the judge a quo, who refused it for the reason, among others, that it was impossible for him to do so from the showing made on the record as made up. We do not find, from our examination of the transcript, that we are in any better position than was the trial judge to comply with plaintiffs' request. The most that we are able to say is that our decree affirming the judgment means that the defendant company shall drill at least one more well on plaintiffs' lands within a reasonable time after the decree has become final. What shall constitute such reasonable time, or how many more wells, if any, should be drilled thereafter, we are not, by reason of the state of the record, in a position to determine. On that phase of the case, plaintiffs and the defendant company must conform to and be governed by what is expected of persons of ordinary prudence under similar circumstances and conditions, having due regard for the interests of both contracting parties.

For the reasons assigned, the judgment appealed from is affirmed, at appellant's cost.

THOMPSON, J., recused.